### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

**PAMELA NORMAN**            )
                        )
           **Plaintiff,**        )
                        )
           **v.**           )        **Civil Action No. WGC-10-307**
                        )
**MICHAEL ASTRUE**        )
**Commissioner of Social Security**   )
                        )
          **Defendant.**      )
                        )

### MEMORANDUM OPINION

Plaintiff Pamela Norman ("Ms. Norman" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383f.  The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition.  *See* ECF Nos. 3, 7-8.[1]  Pending and ready for resolution are Plaintiff's Motion for Summary Judgment, or in the alternative, Motion for Remand (ECF No. 19) and Defendant's Motion for Summary Judgment (ECF No. 26).  No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2011).  For the reasons set forth below, Plaintiff's Alternative Motion for Remand will be granted and Defendant's Motion for Summary Judgment will be denied.

---

[1]  The case was subsequently reassigned to the undersigned.

1. **Background**.

On July 11, 2007 Ms. Norman filed applications for DIB[2] and SSI alleging a disability

onset date of April 8, 2007 due to mental problems, back and knee pain and four (heat-related)

strokes.  *See* R. at 132-34, 135-39, 181.  Ms. Norman's applications were denied initially on

September 26, 2007.  R. at 81-84.  The case record does not contain Ms. Norman's request for

reconsideration and the Social Security Administration's denial.[3]  On November 8, 2008 Ms.

Norman requested a hearing before an Administrative Law Judge ("ALJ").  R. at 127-31.  A

hearing was convened on January 29, 2009.  Ms. Norman requested a postponement because

she had hired a lawyer the previous day.  The request to postpone was granted.  No testimony

was taken. R. at 70-74.  On April 17, 2009 an ALJ convened a hearing.  R. at 22-69.  Ms. Norman

was represented by a counsel at this hearing.  The ALJ obtained testimony from Ms. Norman

and a vocational expert ("VE").  In the July 29, 2009 decision the ALJ found Ms. Norman is not

disabled within the meaning of the Act.  R. at 21.  Ms. Norman thereafter requested a review of

the hearing decision on August 20, 2009.  R. at 6-7.  On December 15, 2009 the Appeals Council

denied Ms. Norman's request for review, R. at 1-3, thus making the ALJ's determination the

Commissioner's final decision.

2. **ALJ's Decision**.

The ALJ evaluated Ms. Norman's claims for DIB and SSI using the sequential evaluation

process set forth in 20 C.F.R. §§ 404.1520, 416.920.  Ms. Norman bears the burden of

---

[2] Ms. Norman "has acquired sufficient quarters of coverage to remain insured through March 30, 2010."  R. at 11. *See also* R. at 14, 175.

[3] The case record contains *two* copies of Form SSA-831-C3, *Disability Determination and Transmittal* at the initial level.  R. at 75-76.  Omitted from the case record is the *Disability Determination and Transmittal* form for the reconsideration level.

demonstrating her disability as to the first four steps.  At step five the burden shifts to the Commissioner.  If Ms. Norman's claims fail at any step of the process, the ALJ does not advance to the subsequent steps.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  At step one the ALJ found Ms. Norman has not engaged in substantial gainful activity since April 8, 2007, the alleged onset date of disability.  R. at 14.  The ALJ concluded at step two that Ms. Norman's "obesity, osteoarthrosis, substance abuse disorder (alcohol and drugs), borderline intellectual functioning, depressive disorder and personality disorder" are severe impairments.  *Id.*  In accordance with 20 C.F.R. §§ 404.1520a, 416.920a, the ALJ followed a special technique to evaluate the severity of Ms. Norman's mental impairments.

To satisfy the "paragraph B" criteria of Listings 12.04,[4] 12.08[5] and 12.09[6] ("paragraph D" criteria of Listing 12.05[7]), Ms. Norman must demonstrate at least two of the following:  *marked* restriction of activities of daily living, *marked* difficulties in maintaining social functioning, *marked* difficulties in maintaining concentration, persistence or pace, or *repeated* episodes of decompensation, each of extended duration.  In reviewing the evidence of record including Ms. Norman's testimony, the ALJ found Ms. Norman has a *mild* restriction of activities of daily living.  "The claimant is totally independent in all activities of daily living and able to participate in a wide variety of activities including household chores, shopping and caring for personal needs."  R. at 14.

---

[4]  Affective Disorders.

[5]  Personality Disorders.

[6]  Substance Addiction Disorders.

[7]  Mental Retardation.

Regarding social functioning, the ALJ found Ms. Norman has *moderate* difficulties.  "Ms. Norman has friends and family with whom she socializes.  She has been able to maintain a long-term relationship with her boyfriend.  She is able to interact appropriately with the public while shopping and running errands."[8]  R. at 15.  The ALJ found Ms. Norman has *moderate* difficulties with concentration, persistence or pace.  "The claimant is able to follow simple instructions, and concentrate sufficiently to play cards, follow movie and television plots and travel independently."  *Id.*  Finally, concerning episodes of decompensation, the ALJ found Ms. Norman experienced *no* episodes of an extended duration.  Because Ms. Norman's mental impairments do not at least cause two marked limitations or one marked limitation and repeated episodes of decompensation, the "paragraph B" ("paragraph D" for Listing 12.05) criteria have not been satisfied.  *Id.*

Next the ALJ considered whether the "paragraph C" criteria for Listings 12.04, 12.08 and 12.09 have been met.  He found those criteria unsatisfied for the following reasons.

> The claimant has not been hospitalized for psychiatric treatment.
> She is able to live independently in the community and does not
> require a highly supervised or structured environment.

R. at 15.

Thereafter the ALJ turned his attention to Listing 12.05.  Ms. Norman will satisfy the severity for this disorder if she meets the requirements in paragraphs A, B, C or D.  The ALJ already determined that Ms. Norman does not meet the requirements of paragraph D.  *See infra*.  Paragraph A requires "[m]ental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded[.]"  20 C.F.R.

---

[8]  The Court notes this description *fails* to identify *any* activities or behaviors warranting a *moderate* rating.

404, Subpt. P, App. 1 § 12.05(A) (2009).  The ALJ determined Ms. Norman does not meet the requirements of paragraph A.  "[T]he claimant has been able to work at the substantial gainful activity level for several years, take care of her home and family, and generally adapt to her environment and society.  There is no evidence of any deficits in adaptive behavior."  R. at 15.

To meet the requirements of 12.05, paragraph B, Ms. Norman must produce evidence of "[a] valid verbal, performance, or full scale IQ of 59 or less[.]"  20 C.F.R. 404, Subpt. P, App. 1 § 12.05(B) (2009).  For paragraph C Ms. Norman must produce evidence of "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]"  *Id.* 404, Subpt. P. App. 1, § 12.05(C).  The ALJ found Ms. Norman met neither paragraph B nor paragraph C because "[t]he claimant's IQ scores are all over 70 and there is no evidence that the claimant's significant subaverage intellectual functioning manifested prior to age 22."  R. at 15.

Having completed the special technique for evaluating Ms. Norman's mental impairments, the ALJ resumed the sequential evaluation process.  At step three the ALJ determined Ms. Norman does not have an impairment or combination of impairments that meets or medically equals the criteria of any of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. at 14.  The ALJ specifically considered Listing 1.01[9] with regard to Ms. Norman's osteoarthrosis, *Social Security Ruling* 02-1p[10] with regard to Ms. Norman's obesity and Listings 12.04, 12.05, 12.08 and 12.09 regarding Ms. Norman's

---

[9]  Category of Impairments, Musculoskeletal.

[10]  Titles II and XVI: Evaluation of Obesity.

depressive disorder, borderline intellectual functioning, personality disorder and substance abuse disorder (alcohol and drugs).

The ALJ then proceeded to determine Ms. Norman's residual functional capacity ("RFC").  The ALJ found Ms. Norman can perform light work as defined in the Regulations except "she cannot climb ropes, ladders or scaffolds.  She can occasionally climb ramps and/or stairs, balance, crawl, crouch, stoop and/or squat.  She is limited to simple, routine work working with things more than with people.  Work should be more self-paced/goal oriented versus production rate type work."  R. at 15-16.  At step four the ALJ found Ms. Norman is not capable of performing her past relevant work as a nurse's assistant, a fast food cashier, a deli worker, a pizza delivery driver, a dishwasher and a cook due to her exertional and nonexertional limitations.  R. at 20.

Proceeding to step five, the ALJ considered Ms. Norman's age (47 years old on the alleged onset date of disability; defined as a younger individual age 18-49), education (high school), past work experience (transferability of job skills is not material) and her RFC (light work with limitations).  The ALJ found the Social Security Administration met its burden of proving Ms. Norman is capable of performing other work[11] that exists in significant numbers in the national economy, relying on the testimony of the VE.  R. at 20, 62.  Accordingly, the ALJ concluded that Ms. Norman is not disabled within the meaning of the Act.  R. at 21.

3. **Standard of Review**.

The role of this Court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal

---

[11]  A finish inspector, a table worker and a grader/sorter.

standards.  42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury.  *Hays*, 907 F.2d at 1456.  This Court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence.  *Id.*

4. **Discussion**.

Plaintiff asserts the ALJ erroneously evaluated the opinion of her treating physician (psychiatrist) Dr. Lisa Green-Paden.  The ALJ accorded *moderate weight* to the opinions of Dr. Green-Paden.  Plaintiff argues the ALJ "failed [to] explain which portions of her opinions he was according weight to, and failed to explain how he incorporated any of her opinions into his residual functional capacity assessment."  ECF No. 19-1 at 9.  Plaintiff further contends, "although Dr. Green-Paden's assessment contains numerous opinions assessing various work-related functions, the Administrative Law Judge failed to assess or evaluate any of these opinions in assessing the Plaintiff's residual functional capacity."  *Id.*  In short, Plaintiff asserts the ALJ's evaluation of Dr. Green-Paden's opinions defies review.  Under such circumstances a remand is warranted.

In the Defendant's cross-motion for summary judgment the Commissioner notes the ALJ properly declined to give controlling weight to the opinions of Dr. Green-Paden.  According to

the Commissioner the ALJ articulated the reasons for the weight assigned.  "The ALJ noted, among other things, that Dr. Green-Paden had seen Ms. Norman only four times after the initial evaluation, and only three times before she completed the form at issue here."  ECF No. 26-1 at 8 (citation omitted).  The Commissioner further contends "the ALJ explained that he was rejecting Dr. Green-Paden's assessment that Ms. Norman had experienced work-related limitations since at least 1983-correctly noting that this doctor did not begin treating Ms. Norman until May 2008 and thus could not assess with any assurance her patient's condition so long before that time."  *Id.* at 8-9.  According to the Commissioner the ALJ *agreed* with Dr. Green-Paden's assessment that Ms. Norman had no episodes of decompensation and only had moderate difficulties in social functioning.  The ALJ cited Dr. Green-Paden's opinion that Ms. Norman's GAF was 55.  According to the Commissioner, this rating indicates moderate symptoms and thus is consistent with the ALJ finding Ms. Norman had moderate limitations in both social functioning and in concentration, persistence and pace.  Moreover, "Dr. Green-Paden's opinion that Ms. Norman has great difficulty making decisions and following complex instructions is consistent with the ALJ's finding that Ms. Norman is limited to simple, routine work (which will not require her to make decisions or follow complex instructions)."  *Id.* at 9 (citations omitted).  Thus, the ALJ assigning moderate weight to Dr. Green-Paden's opinions was appropriate.

In the decision the ALJ's evaluation of Dr. Green-Paden's opinions states:

> The opinion of Dr. Green-Paden is given moderate weight.  It is not totally consistent with the longitudinal records or the claimant's activities of daily living and appears based more on the

claimant's self reports[12] than on any objective medical/psychological evaluation or evidence.  The claimant had only attended three sessions[13] with Dr. Green-Paden at the time that the doctor had completed the form and as was true with almost all of her interviews with care providers, the claimant's self reports contained inconsistencies and non-supported statements.  Dr. [Green-] Paden did not begin treating the claimant until May 2008 and cannot possibly state with any assurance that the claimant has had mental impairments and work related limitations since 1983.

R. at 19.

Contrary to the Commissioner's assertions, the ALJ's evaluation only states, by examples, why he *disagrees* with Dr. Green-Paden's opinions.  Nowhere in the above evaluation does the ALJ cite *any instances* where he *agrees* with Dr. Green-Paden's opinions.  Additionally, the ALJ fails to be specific about *how* Dr. Green-Paden's opinions are not totally consistent with the longitudinal records or Ms. Norman's activities of daily living.  This Court, as a reviewing authority, lacks *specific* information to assess on what grounds the ALJ gave favorable consideration to Dr. Green-Paden's opinions because the ALJ fails to identify them.  The instances cited by the Commissioner in his brief are *post hoc* rationalizations[14] not articulated by the ALJ.  "[Even if] there is enough evidence in the record to support the ALJ's decision, the principles of administrative law require the ALJ to rationally articulate the grounds for [his] decision and confine [this court's] review to the reasons supplied by the ALJ."  *Steele v.*

---

[12]  Portions of Scuddy F. Fontenelle, III, Ph.D.'s opinion is based on Ms. Norman's self-reports.  For instance, under Diagnostic Impressions, Axis I, Scuddy F. Fontenelle, III, Ph.D. records "Major Depression Disorder, Recurrent/Alcohol Dependence, *by History*[.]"  R. at 226 (emphasis added).

[13]  Dr. Green-Paden saw Ms. Norman *two more times* compared to Scuddy F. Fontenelle, III, Ph.D., the psychological consultant.

[14]  "A post-hoc rationalization is a new rationale for an agency action that is put forth for the first time after the action is final."  *Dow AgroSciences LLC v. National Marine Fisheries Serv.*, 821 F. Supp. 2d 792, 799 (D. Md. 2011).

*Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).  The Court finds Plaintiff is correct in asserting the

ALJ's evaluation defies review.

The case record contains three ratings of Ms. Norman's functional limitations:  by (1)

Joseph Kahler, Ph.D. (a non-examining State agency psychologist), (2) Dr. Green-Paden and (3)

the ALJ.  Those three ratings are displayed in the following chart.

| *Functional Limitation* | Opinion of Joseph Kahler, Ph.D. 8/31/2007 | Opinion of Dr. Lisa Green-Paden 1/26/2009 | Assessment by the ALJ 7/29/2009 |
|---|---|---|---|
| *Restriction of Activities of Daily Living* | **mild** | **moderate** | **mild** |
| *Difficulties in Maintaining Social Functioning* | **moderate** | **moderate** | **moderate** |
| *Difficulties in Maintaining Concentration, Persistence or Pace* | **moderate** | **marked** | **moderate** |
| *Episodes of Decompensation, Each of Extended Duration* | **none** | **none** | **none** |

*See* R. at 14-15, 242, 266.

The ALJ's assessment is *identical* to the opinion of Joseph Kahler, Ph.D. which was

formed based upon a review of Ms. Norman's case record including the August 29, 2007

psychological consultative evaluation performed by Scuddy F. Fontenelle, III, Ph.D.  The ALJ fails

to make *any* mention of Joseph Kahler, Ph.D. in the decision.  Although the ALJ summarizes the

psychological consultative evaluation of Scuddy F. Fontenelle, III, Ph.D. in the decision, the ALJ

does not assign or accord any weight to this opinion.  This is contrary to the Social Security

Regulations, particularly in light of the ALJ *not* assigning <u>controlling weight</u> to Dr. Green-Paden's opinions.

> Unless the treating source's opinion is given controlling weight, the administrative law judge **must explain** in the decision the **weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist**, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii) (2009) (emphasis added).

The Regulations also dictate that the ALJ use relevant factors — "such as the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions" — to evaluate the opinions of a State agency medical or psychological consultant (*i.e.,* Scuddy F. Fontenelle, III, Ph.D.) or other program physician or psychologist (*i.e.,* Joseph Kahler, Ph.D.). *See id.*

The Court finds the ALJ failed to address the contrasting opinions of Joseph Kahler, Ph.D. and Dr. Green-Paden regarding Ms. Norman's mental residual functional capacity. In the decision the ALJ failed to *weigh* Joseph Kahler, Ph.D.'s opinion, contrary to the Regulations' requirement. The ALJ also failed to mention in the decision the *Mental Residual Functional Capacity Assessment* completed by Joseph Kahler, Ph.D., R. at 228-31, as well as the *Mental Abilities and Aptitudes Needed to Do Unskilled Work* and the *Mental Abilities and Aptitudes Needed to Do Semiskilled and Skilled Work* completed by Dr. Green-Paden, *id*. at 265-66. Moreover, it is unclear from the decision which ratings of mental activity by Dr. Green-Paden the ALJ found consistent with Ms. Norman's case record and which ratings of mental activity by

Dr. Green-Paden the ALJ found *not totally consistent with* Ms. Norman's case record.  Joseph

Kahler, Ph.D.'s and Dr. Green-Paden's differing assessments of multiple categories of mental

activity are reflected in the following chart.

| Mental Activity | Opinion of Joseph Kahler, Ph.D. 8/31/2007 | Opinion of Dr. Lisa Green-Paden 1/26/2009 |
|---|---|---|
| *The ability to remember locations & work-like procedures* | **Not significantly limited** | **Unable to meet competitive standards** |
| *The ability to understand & remember very short & simple instructions* | **Not significantly limited** | **Seriously limited, but not precluded** |
| *The ability to carry out very short & simple instructions* | **Not significantly limited** | **Seriously limited, but not precluded** |
| *The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances* | **Moderately limited** | **Unable to meet competitive standards** |
| *The ability to sustain an ordinary routine without special supervision* | **Not significantly limited** | **Unable to meet competitive standards** |
| *The ability to work in coordination with or proximity to others without being distracted by them* | **Not significantly limited** | **Unable to meet competitive standards** |
| *The ability to make simple work-related decisions* | **Not significantly limited** | **Unable to meet competitive standards** |
| *The ability to complete a normal workday & workweek without interruptions from psychologically based symptoms & to perform at a consistent pace without an unreasonable number & length of rest periods* | **Moderately limited** | **Unable to meet competitive standards** |
| *The ability to accept instructions & respond* | **Moderately limited** | **Unable to meet competitive** |

| | | |
|---|---|---|
| *appropriately to criticisms from supervisors* | | **standards** |
| *The ability to respond appropriately to changes in the work setting* | **Not significantly limited** | **Seriously limited, but not precluded** |
| *The ability to interact with the general public* | **Moderately limited** | **Seriously limited, but not precluded** |
| *The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness & cleanliness*[15] | **Not significantly limited** | **Seriously limited, but not precluded** |

*See* R. at 228-29, 265-66.

A remand is warranted since the ALJ failed to follow the Social Security Administration's own Regulations concerning the evaluation of opinion evidence.

5. **Conclusion**.

Substantial evidence does not support the decision that Plaintiff is not disabled. Accordingly, the Plaintiff's Alternative Motion for Remand will be granted and Defendant's Motion for Summary Judgment will be denied.

Date: <u>August 3, 2012</u>              _____/s/_____
                                                            WILLIAM CONNELLY
                                                            UNITED STATES MAGISTRATE JUDGE

---

[15] In the decision the ALJ summarized the psychological consultative evaluation by Scuddy F. Fontenelle, III, Ph.D. The ALJ noted, "[t]he claimant reported bathing daily but that report was not considered valid as the claimant was poorly groomed, disheveled and had a body odor during the interview."  R. at 18.